United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA SAUCER BILBO,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF ALAMEDA, CALIFORNIA, JOHN P. WILLIAMS,<br><br>Defendants. | Case No. 17-cv-00932-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 19 |

Before the Court is a Motion to Dismiss filed by Defendant County of Alameda ("Alameda")[1]. ECF No. 19. The Court will grant the motion in part and deny it in part.[2]

## I. BACKGROUND

### A. Factual History

For the purpose of deciding this motion, the Court accepts as true the following factual allegations from Plaintiff's First Amended Complaint ("FAC"). ECF No. 17.

This case concerns a stolen car. At the end of 2013, Plaintiff purchased a limited edition 2005 Mercedes Benz CLK-500 from European Auto. Id. ¶ 7. The vehicle was one of only 117 made and "had a relatively low number of miles on it." Id. After the purchase, Plaintiff took her car several times to Mercedes of Oakland ("Euromotors") for service and repairs. Id. Over the course of those visits, Euromotors' employees asked Plaintiff at various times whether she would be willing either to trade her car in for another car or sell it for an above-market price. Id. ¶¶ 8-13.

---

[1] Defendant notes that "the instant motion to dismiss . . . is not brought on behalf of Inspector Williams". ECF No. 19 at 10 n. 1. The Court's order applies only to Defendant County of Alameda.

[2] The Court previously concluded that the motion was suitable for disposition without oral argument. ECF No. 29; see Civ. L.R. 7-1(b).

1    Altogether, Euromotors employees made Plaintiff five separate offers, all of which Plaintiff

2    declined. Id.

3           Plaintiff went out of town between July 16 and July 31, 2015. Id. ¶ 14. Plaintiff decided

4    to store "a significant amount of personal property in the car [during her absence] . . . because she

5    does not have an alarm on her house," and she thought the items would be safer in her secured

6    garage. Id. ¶ 54(j). She did not use her car the weekend following her return. Id. On August 3,

7    2015, when Plaintiff turned on the ignition in her vehicle, two service lights appeared. She called

8    Euromotors and spoke with Service Manager John Jackson, who eventually told her she could

9    have the car towed to the shop on August 8. Id. ¶ 15-16.

10          On August 8, Plaintiff contacted the towing company Jackson told her to call. Id. ¶ 17.

11   The towing company picked up her car that morning and brought it to Euromotors, which

12   informed her by phone that the car would be ready for pick-up the following Wednesday. Id. ¶

13   17-18. Plaintiff asked to speak with Jackson to make sure that her motor cover, which had been

14   left off during her previous visit, would be installed at the same time. Id. ¶19. A Euromotors

15   employee told Plaintiff that Jackson would call her back, but he failed to do so. Id. Plaintiff

16   called Euromotors again on Monday, August 10, and the operator once again informed her that

17   Jackson would call her, but he did not. Id. ¶ 20. The same thing happened on Wednesday, August

18   12, and on Thursday, August 13. Id. ¶ 21.

19          On August 14, Plaintiff, feeling frustrated, called Euromotors and said she was coming to

20   pick up her vehicle. Id. ¶ 22. The dealership then informed her that her car had been stolen on

21   August 8. Id. Plaintiff went to Euromotors with three family members "to figure out what was

22   going on," and spoke to service manager Garland Steiding. Id. ¶ 23. Steiding said the dealership

23   had not realized the vehicle was stolen until he reviewed a surveillance video, and he "was

24   therefore just calling the police." Id.

25          Oakland Police Officer Love responded to the call. Id. ¶ 24. When he asked how the

26   dealership could not have realized that the car was stolen, Steiding threw his hands in the air and

27   did not give a verbal response. Id. Plaintiff demanded that the dealership show the surveillance

28   video to the police, and Plaintiff watched it as well. Id. ¶ 25. The video showed that several hours

after Plaintiff's car was towed to Euromotors, "a man in women's clothing walked across the street into the garage, briefly looked both ways, then went straight into the middle stall" and drove away in Plaintiff's vehicle. Id. ¶ 25.

Officer Love asked to speak to the tow truck driver, who came to Euromotors and explained that he delivered the vehicle and gave the keys to an unspecified Euromotors employee. Id. ¶ 26. As he drove away, the driver noticed the car being moved into the middle stall. Id. Euromotors did not employ the standard procedure of leaving the vehicle's keys in a lockbox, and the employees stated that the keys must have been left in the car by mistake. Id. ¶ 27. Moreover, while there are normally four people and two guards working in the garage, none could be seen in the video. Id. ¶ 28. The video showed two employees leaving the garage and walking down the street. Id.

Later that afternoon, two Oakland Police officers arrived at Euromotors and informed Plaintiff that the car had been found on August 10, 2015, with the wheels removed, and that the car was at a towing company. Id. ¶ 30. Plaintiff asked Euromotors to replace the wheels, service the vehicle, and give it back to Plaintiff, but they refused. Id. ¶ 31. Plaintiff went to see her vehicle but could not enter it because she did not own an extra key. Id.

Plaintiff's insurer paid Plaintiff for the value of her car. Id. ¶ 32. Plaintiff asked Euromotors' insurer to fix her car and give it back to her. Id. Over the course of several weeks, Euromotors' insurer offered Plaintiff money, but she refused and stated she would prefer to have her car back. Id. Plaintiff and her insurer then pursued legal action against Euromotors' insurer. Id. ¶ 33. Plaintiff alleges that Euromotors' insurer then hired an "investigator" to begin harassing Plaintiff.[3] Id.

About two weeks after the harassment allegedly started, Alameda County District Attorney Investigator John P. Williams ("Williams"), went to see Plaintiff at her office. Id. ¶ 34. Williams approached Plaintiff while she was sitting at her desk, with both his hands on his waist under his

---

[3] Plaintiff does not directly state that the "investigator" who started harassing her was District Attorney Investigator John P. Williams, but it can be inferred from her filings, ECF No. 17 at 7, and her allegations. See ECF No. 17 at 7-10.

3

jacket "to show Plaintiff his gun." Id. ¶ 34. Williams stood over Plaintiff with his face almost touching hers, and began threatening and insulting her. Id. ¶ 34. Williams told Plaintiff that he knew she "bought a wig for someone and had them wear it to steal the vehicle," and that she should confess. Id. As Williams did this, a man accompanying him stood at the door of Plaintiff's office, "also with his hands under his jacket to show his gun." Id. Williams continued harassing Plaintiff for nearly thirty minutes, then yelled back into Plaintiff's office, as he was getting into his car, that he promised to be back to arrest her. Id. ¶ 35.

Over the course of the next several weeks, Williams harassed Plaintiff by phone. Id. ¶ 36. Sometimes Plaintiff would cry and ask Williams to leave her alone. Id. Over the course of those phone calls, Plaintiff told Williams that she believed the dealership was "involved in the theft because they had been trying to get ownership of her vehicle." Id. Approximately six weeks after Williams initially showed up at Plaintiff's office, Williams obtained a warrant to arrest Plaintiff. Id. ¶37.

Williams executed the warrant on Tuesday, November 24, 2015, two days before Thanksgiving. Id. ¶ 39. Several law enforcement officers appeared at Plaintiff's office. Id. Williams approached Plaintiff and stated "I told you I was going to get your ass." Id. Plaintiff asked to see the warrant for her arrest, but Williams refused to show it to her. Id. When instructed to put her hands behind her back, Plaintiff responded that she could not because she was wearing a body brace as a result of surgery in September. Id. ¶ 40. The officers cuffed her hands behind her back anyway. Id. Williams did not read Plaintiff her Miranda Rights, but began laughing and told her "[y]our ass is going to be eating dinner in jail." Id. People were drawn to the area of the arrest because of the presence of multiple police cars. Id. ¶ 41. Once Plaintiff was placed in Williams' vehicle, the officers moved the handcuffs so Plaintiff's hands were in front of her. Id. ¶ 42.

Williams took Plaintiff to a jail in Contra Costa County, although the warrant issued from Alameda County, in order to cause her further harm and delay her ability to bail herself out of the jail. Id. ¶ 43. When Plaintiff arrived at the jail, Williams knowingly and falsely told several parole officers—who knew Plaintiff because of her work—that Plaintiff was a criminal and had committed fraud. Id. ¶ 44. Williams then told Plaintiff that she was going to spend Thanksgiving

4

1    in jail, and that if she wanted to come clean, she should call him. Id. Bail was set at $255,000 and
2    Plaintiff posted bond before Thanksgiving. Id. ¶ 45.

Plaintiff alleges she suffered economic, physical, and emotional harm due to Williams' conduct. Id. On August, 16, 2016, all charges filed against Plaintiff were dismissed for lack of evidence. Id. Plaintiff had to pay a criminal defense attorney, however, and her bond payments reflected negatively on her credit. Id. ¶¶ 45-46.

Plaintiff also had to cancel several trips because she was not permitted to leave California under the conditions of her release on bond, experienced anxiety attacks and severe emotional distress due to her false arrest, and was told she could no longer serve as a foster parent. Id. ¶ 46-50. Plaintiff also alleges that the non-profit she manages was denied two grants due to her arrest. Id. ¶ 49.

In October 2016, Plaintiff "filed an injury claim with the Alameda District Attorney's Office" ("D.A."). Id. ¶ 52. When she filed it, a man who represented the D.A. informed her that the form she used was incorrect, but that he "would take it." Id. As of April 17, 2017, when Plaintiff filed her FAC in this Court, the claim Plaintiff filed with the Alameda D.A.'s Office had not been resolved. Id. Plaintiff "filed a further claim with the County of Alameda on February 24, 2017." Id.

### B.  Procedural History

Plaintiff filed her initial complaint in this action on February 23, 2017. ECF No. 1. On March 29, 2017, the City of Oakland filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 10. On April 5, 2017, the County of Alameda also filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 12. On April 14, 2017, Plaintiff filed a Notice of Voluntary Dismissal of the City of Oakland. ECF No. 16. On April 17, 2017, the Plaintiff filed the operative FAC. ECF No. 17. Plaintiff alleges three causes of action: (1) violation of her Fourth Amendment right to be free from false arrest under 42 U.S.C. § 1983, ECF No. 17 at 10; (2) false arrest and false imprisonment under California state law, ECF No. 17 at 15, and; (3) intentional infliction of emotional distress under California state law, ECF No. 17 at 20. On May 1, 2017, Alameda filed a Motion to Dismiss Plaintiff's First Amended Complaint

5

1  Pursuant to Federal Rule of Civil Procedure 12(b)(6), which motion the Court now considers.

2  ECF No. 19.

## II. REQUEST FOR JUDICIAL NOTICE

As an initial matter, the County of Alameda requests that the Court take judicial notice of Williams' Declaration in Support of Probable Cause, and a true and correct copy of Plaintiff's arrest warrant. Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Court may also "consider materials incorporated into the complaint," where "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." Coto Settlement v. Eisenberg, 593 F. 3d 1031, 1038 (9th Cir. 2010). This is true even if the plaintiff does not explicitly allege the contents of the document in the complaint. Knievel v. ESPN, 393 F. 3d 1068, 1076 (9th Cir. 2005). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Plaintiff's false arrest claim necessarily relies in part on whether Williams' declaration provided probable cause sufficient to support a warrant for her arrest. Accordingly, the Court takes judicial notice of Exhibits A and B. ECF No. 20.

## III. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. While this standard is not a probability requirement, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). In determining whether a plaintiff has met this plausibility standard, the Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005). In the case of *pro se* parties, courts have an obligation, particularly in civil rights cases, to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. Bretz v. Kelman, 773 F. 2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

### 1. Plaintiff's First Cause of Action

Plaintiff alleges a violation under 42 U.S.C. § 1983 of her Fourth Amendment right to be free from false arrest. Section 1983 provides a cause of action against any person who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution and laws of the United States. Section 1983 is not a source of substantive rights, but merely a method for vindicating federal rights established elsewhere. Graham v. Connor, 490 U.S. 386, 3 93–94 (1989). To sustain a section 1983 action, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right. Balistreri v. Pacifica Police Dept., 901 F. 2d 696, 699 (9th Cir. 1988).

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." Dubner v. City & Cnty. of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe 'that the suspect has committed, is committing, or is about to commit an offense.'" Barry v. Fowler, 902 F.2d 770, 773 (9th Cir. 1990) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)); accord United States v. Garza, 980 F.2d 546,

7

550 (9th Cir. 1992).

While a "person" for purposes of § 1983 includes municipalities, such entities cannot be held accountable for their employees' acts under a respondeat superior theory. Monell v. Dep't of Social Serv., 436 U.S. 658, 690 (1978). A government entity may not be held liable under section 1983 unless a policy, custom, or practice of the entity can be shown to be a moving force behind the alleged constitutional violation. Id. at 690, 694. To hold a public entity liable, a plaintiff must demonstrate that the unlawful governmental action was part of the public entity's policy or custom, and that there is a nexus between the specific policy or custom and the plaintiff's injury. Id. at 690-92.

Moreover, "[i]n order to withstand a motion to dismiss for failure to state a claim, a Monell claim must consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts or habits.'" Bedford v. City of Hayward, 2012 WL 4901434, at *12 (N.D. Cal. Oct. 15, 2012) (quoting Warner v. Cty. of San Diego, 2011 WL 662993, at *4 (S.D. Cal. Feb. 14, 2011). "Monell allegations must be [pled] with specificity." Galindo v. City of San Mateo, 2016 WL 7116927, at *5 (N.D. Cal. Dec. 7, 2016).

In addition, a Monell action must be predicated on an underlying constitutional violation. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). If a person has suffered no constitutional injury at the hands of an individual officer, the fact that the departmental regulations might have authorized [particular conduct] is quite beside the point." Id.

Plaintiff pleads that Williams caused her false arrest because he "made numerous false statements and omissions" while performing his role as an investigator for the District Attorney's Office of Alameda County and that the warrant for her arrest was not supported by probable cause. ECF No. 17 ¶ 54-62. Defendant argues there is no underlying constitutional violation because the warrant for Bilbo's arrest was based on probable cause and there was therefore no unreasonable search or seizure. ECF No. 19 at 12; see Cabrera v. City of Huntington Park, 159 F. 3d 374, 380 (9th Cir. 1998) ("To prevail on [her] § 1983 claim for false arrest and imprisonment, [Plaintiff] would have to demonstrate that there was no probable cause to arrest [her].").

Probable cause exists when, under the totality of the circumstances known to the arresting

officers, a prudent person would believe the suspect had committed a crime. See United States v. Garza, 980 F.2d 546, 550 (9th Cir.1992). For information to amount to probable cause, it does not have to be conclusive of guilt, and it does not have to exclude the possibility of innocence. United States v. Lopez, 482 F. 3d 1067, 1072 (9th Cir. 2007). "[P]olice are not required 'to believe to an absolute certainty, or by clear and convincing evidence, or even by a preponderance of the available evidence' that a suspect has committed a crime. All that is required is a "fair probability," given the totality of the evidence, that such is the case. Garcia v. Cty. of Merced, 639 F.3d 1206, 1209 (9th Cir. 2011) (citations omitted).

Plaintiff alleges that Williams submitted false and misleading statements to the magistrate judge who issued the warrant for her arrest. ECF No. 17 ¶ 55. "[O]n a claim of judicial deception, a § 1983 plaintiff need not establish specific intent to deceive the issuing court. Rather, the plaintiff must (1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." Bravo v. City of Santa Maria, 665 F. 3d 1076, 1083 (9th Cir. 2011). The effect of the misrepresentations and omissions on the existence of probable cause is considered cumulatively. United States v. Esparza, 546 F. 2d 841, 844 (9th Cir. 1976). "To determine the materiality of omitted facts, [the Court] consider[s] 'whether the affidavit, once corrected and supplemented, establishes probable cause.' If probable cause remains after amendment, then no constitutional error has occurred.'" Bravo, 665 F.3d at 1084 (internal citations omitted). Whether a false or omitted statement is "material" to the finding of probable cause is a question of law. Butler v. Elle, 281 F.3d 1014, 1024 (9th Cir. 2002).

**a. Material Misrepresentations or Omissions**

Plaintiff alleges that Williams obtained a warrant for her arrest by presenting a declaration of probable cause which included numerous false statements and omissions that were malicious, repressive, oppressive, reckless and deliberately indifferent. ECF No. 17 ¶ 54.

Plaintiff contends that a magistrate judge would not have issued an arrest warrant if Williams had included in his declaration: (1) that Plaintiff's vehicle was repeatedly serviced at

9

Euromotors; (2) that Richmond does not possess a Mercedes dealership and thus Plaintiff did not engage in unusual behavior by having her car towed to Oakland; (3) the actual amount of time that had elapsed between the tow and the theft; (4) that Euromotors provided her with the phone number of the tow company that towed her car; and (5) that Euromotors had deviated from its policy of not leaving a parked car in its parking lot with the key inside the car. ECF No. 17 ¶ 54(b)-(c).

Plaintiff also alleges that a magistrate judge would not have issued a warrant for her arrest if Williams had not included the misstatements that: (1) Plaintiff's vehicle required regular maintenance, id. ¶ 54(a); (2) Plaintiff's vehicle was towed because she had an emergency meeting at Soledad State Prison, id. ¶ 54(b); (3) Plaintiff's vehicle was stolen shortly after it was dropped off, id. ¶ 54(c); (4) police officers recovered the stolen vehicle and notified the lien holder of Plaintiff's vehicle on August 11, 2015, id. ¶ 54(d); (5) the lien holder and not Plaintiff contacted Plaintiff's insurance about the loss, id. ¶ 54(e); (6) Plaintiff's insurance company "obtained a recorded statement from Saucer regarding the recovery of her vehicle," on August 12, two days before Plaintiff stated she learned of the loss herself, id. ¶ 54(f); (7) Plaintiff's insurance obtained a recorded statement in which Plaintiff claimed she towed her vehicle to Mercedes of Oakland on August 10, 2015, id.; (8) on August 14, 2015, Euromotors proactively notified Plaintiff that her vehicle was stolen on August 8, 2015, id. ¶ 54(g); (9) on August 10, 2015, Plaintiff had her vehicle towed to Euromotors because her vehicle was not working, id ¶ 54(h); (10) Plaintiff did not have an appointment and had her vehicle towed to Euromotors without authorization, id. ¶ 54(i); (11) Plaintiff claimed to have an excess of $50,000 worth of personal property inside her vehicle at the time it was stolen, id. ¶ 54(j); (12) Plaintiff submitted false receipts for items she did not purchase, id. ¶ 54(k), and; (13) Plaintiff submitted false receipts showing inflated prices for items she alleged were in her car, id. ¶ 54(l).

Plaintiff further alleges that a court would not have issued a warrant for her arrest if Williams had reported that: (1) Plaintiff's vehicle required service because two service lights came on, and because Euromotors was to reinstall a motor cover it forgot to replace during previous service, id. ¶ 54(a); (2) Plaintiff did not claim to be in Soledad the morning her vehicle was towed,

10

nor did she have her vehicle towed because she had a meeting at Soledad State Prison, id. ¶ 54(b); (3) Plaintiff contacted the lien holder of her vehicle and reported the loss on August 14, 2015, id. ¶ 54(d); (4) Plaintiff, not her vehicle's lien holder, notified her insurance company about the theft on August 14, 2015, id. ¶ 54(e); (5) Euromotors notified Plaintiff her vehicle was stolen only after Plaintiff contacted Euromotors, id. ¶ 54(g); (6) Euromotors contacted the police nearly a week after Plaintiff's vehicle was stolen, id.; (7) Plaintiff's car was towed to Euromotors on August 8, 2015, id. ¶ 54(h); (8) John Jackson, a Euromotors employee, arranged Plaitiff's car to be serviced and have its motor cover replaced, id. ¶ 54(i); (9) Plaintiff did not claim "in excess of $50,000 worth of personal property" was inside her car when it was stolen, but had a significant amount of property stored in the car's trunk and console because she did not have an alarm in her house, had parked the car securely in her garage, and forgot to take out her property from her car before it was towed, id. ¶ 54(j); (10) Plaintiff did not submit receipts for items she did not purchase, id. ¶ 54(k), and; (11) Plaintiff did not submit any forged receipts, id. ¶ 54(l).[4]

The County of Alameda argues that "the undisputed facts are sufficient to provide a reasonable basis for the belief that criminal activity (insurance fraud) was probable such that Williams had probable cause for Plaintiff's arrest." ECF No. 19 at 13. The County argues that the following facts are undisputed: (1) "Plaintiff had her vehicle towed from her residence in Richmond, to Oakland," ECF No. 19 at 13; ECF No. 17, ¶ 65; (2) "Plaintiff's vehicle was stolen from Euromotors' garage," id.; id. ¶ 22; (3) "the vehicle was found stripped," ECF No. 19 at 13; ECF No. 17 ¶ 30; (4) Plaintiff made an insurance claim for her vehicle, id.; id. ¶ 32, and (5) "Williams' probable cause declaration . . . states that Plaintiff 'claimed that she had been storing in excess of $50,000 worth of personal property inside of her 'convertible' Mercedes at the time it was stolen. These items included 13 diamond bracelets, 2 fur coats, multiple laptops, cellular phones and a host of other items," id.; id. ¶ 54(j). The County further argues that because "Plaintiff filed an insurance claim, claiming a loss of over $50,000 worth of personal property in a

---

[4] Although Plaintiff states in her opposition to the current motion that Williams knew she was going to open a dispatch center that required her to have cellphones and laptops, she does not state this fact in her complaint and the Court does not rely on it for purposes of this motion. ECF No. 32 at 6.

11

car that was left in a dealership's garage," that alone is enough to establish a prima facie case of criminal activity. ECF No. 19 at 13.

The County has not demonstrated that Williams' alleged misstatements and omissions were immaterial as a matter of law. "Where the facts or circumstances surrounding an individual's arrest are disputed, the existence of probable cause is a question for the jury." McKenzie v. Lamb, 738 F.2d 1005, 1007 (9th Cir. 1984); see also Morin v. Ramos, No. CV 05-4017 JVS (FFM), 2007 WL 1696113, at *4 (C.D. Cal. June 8, 2007) ("The existence of probable cause is generally a question of fact to be resolved by the jury."). "Although 'police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause.'" Crowe v. Cty. of San Diego, 680 F.3d 406, 433 (9th Cir. 2010) (quoting United States v. Ortiz–Hernandez, 427 F.3d 567, 574 (9th Cir.2005)).

Williams' affidavit disregarded Bilbo's contentions: (1) that the vehicle was stolen from the premises of a party interested in buying it; (2) that the interested party offered to buy the vehicle several times; (3) that the interested party scheduled vehicle repairs and booked an appointment with Plaintiff to service the stolen vehicle; (4) that the interested party has a practice of safeguarding the keys of the vehicles it is to service, but failed to do so in the case of the stolen vehicle; (5) that the interested party waited approximately one week to report the vehicle's theft to law enforcement; and (6) that Bilbo had forgotten to take her personal property out of her car, which was out of sight and that Bilbo had left there for safety while she went on vacation. The facts and circumstances surrounding Bilbo's arrest are sufficiently disputed to preclude the Court from concluding, based on the pleadings alone, that there was probable cause to support the warrant for Bilbo's arrest.

Defendant argues that Williams' affidavit was not unreasonable because Plaintiff engaged in "highly unusual activity." ECF No. 45 at 3; see also ECF No. 17 ¶ 64(j); ECF No. 19 at 13. Such "highly unusual activity" consisted of Plaintiff filing a large insurance claim for personal property she left inside her car, which could be easily accessed through a convertible top, and leaving her car at a dealership. Id. Plaintiff claims that she left her property in her vehicle's console and trunk because she forgot to take it out after returning from vacation. ECF No. 17 ¶

54(j). Most cars have compartments that can be closed, shielding their contents from view.

"While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, mere suspicion, common rumor, or even strong reason to suspect are not enough." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (alterations and citations omitted). The "unusual activity" of leaving valuables in closed compartments in a car while it is being serviced does not, in and of itself, rise above a "strong reason to suspect" or "suspicion" in order to support a finding of probable cause as a matter of law.

### b. Intentional or Reckless Disregard for the Truth

The Court also considers whether Plaintiff made "a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." Bravo, 665 F. 3d at 1083. "Clear proof of deliberate or reckless omission is not required." United States v. Stanert, 762 F.2d 781, as amended, 769 F. 2d 1410 (1985). Viewing the evidence and drawing all inferences in the light most favorable to Plaintiff, the Court concludes that Plaintiff has pled allegations in her complaint that would allow a Court to infer that Williams exhibited reckless disregard for the truth when he omitted or misrepresented material information in his affidavit for an arrest warrant.

As previously discussed, a magistrate judge may have considered that: (1) the vehicle was stolen from the premises of a party interested in buying it; (2) the interested party offered to buy the vehicle several times; (3) the interested party scheduled to service the stolen vehicle; (4) the interested party has a practice of safeguarding the keys of vehicles on its premises but failed to safeguard the keys of the stolen vehicle; (5) the interested party waited approximately one week to report the vehicle's theft to law enforcement. Plaintiff alleges that Williams was aware of these facts. ECF No. 17 ¶¶ 54, 57, 64, 67. Therefore, viewed in the light most favorable to Plaintiff, Williams deliberately omitted this information from his affidavit in support of his arrest warrant.

Construed liberally, Plaintiff's complaint alleges Williams made false statements or omissions that were material to the finding of probable cause. The Court concludes that Plaintiff has adequately alleged that the arrest warrant was issued in the absence of probable cause. Thus, plaintiff has successfully alleged a Fourth Amendment violation.

### 2. <u>Monell</u> Claims

The Court next considers whether Plaintiff's complaint states a plausible <u>Monell</u> claim. "In order to establish liability for governmental entities under <u>Monell</u>, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." <u>Dougherty v. City of Covina</u>, 654 F. 3d 892, 900 (9th Cir. 2011) (citations omitted).

"In order to withstand a motion to dismiss for failure to state a claim, a <u>Monell</u> claim must consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts or habits.'" <u>Bedford v. City of Hayward</u>, 2012 WL 4901434, at *12 (N.D. Cal. Oct. 15, 2012) (citations omitted); <u>see</u> <u>also</u> <u>A.E. v. Cty. of Tulare</u>, 666 F.3d 631, 637 (9th Cir. 2012) (holding that <u>Twombly</u> and <u>Iqbal</u> pleading standard also applies to <u>Monell</u> claims). Prior to <u>Twombly</u> and <u>Iqbal</u>, the Ninth Circuit held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that individual officers' conduct conformed to official policy, custom, or practice." <u>Karim-Panahi v. L.A. Police Dep't</u>, 839 F. 2d 621, 624 (9th Cir. 1988). Such conclusory allegations no longer suffice and a plaintiff is required to state facts sufficient "to state a claim that is plausible on its face." <u>Iqbal</u>, 556 U.S. at 663 (citing <u>Twombly</u>, 550 U.S. at 547). As another court in this district recently noted, "[i]n line with <u>A.E.</u>, courts in this circuit have generally dismissed <u>Monell</u> claims that fail to identify the specific content of the municipal entity's alleged policy or custom," but "courts in this circuit have upheld <u>Monell</u> claims that succeed in alleging a specifically identifiable policy or custom." <u>La v. San Mateo Cty. Transit Dist.</u>, No. 14-CV-01768-WHO, 2014 WL 4632224 at *7–8 (N.D. Cal. Sept. 16, 2014).

Thus, in <u>A.E.</u>, the Ninth Circuit held that plaintiff failed to state a claim for <u>Monell</u> liability against defendant county by alleging that defendants performed all acts and omissions regarding plaintiff's foster care placement and supervision "under the ordinances, regulations, customs, and practices of" the county and that the defendants "maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs [alleged]." 666

F.3d at 637. By contrast, in La, the plaintiff "allege[d] that SamTrans has a policy or custom of performing a specific adverse employment action (termination) against a particular subset of employees (those who report internal misconduct)." 2014 WL 4632224 at *8.[5] The district court found that those allegations were "substantially more definite than the allegations dismissed in A.E." and that plaintiff had "alleged enough to provide SamTrans with fair notice and the ability to effectively defend itself, and to state a plausible claim for relief under Monell." Id.

Plaintiff's allegations here are more definite than the ones in either A.E. or La. She alleges:

> Upon information and belief, Defendant County of Alameda's District Attorney's Office has a policy or longstanding, widespread custom of relying almost exclusively on the information provided by insurers in pursuing insurance fraud claims, and failing to independently investigate or even make a minimal attempt to verify information received from such sources, even though such sources are inherently suspect given their motive and interest in avoiding the payment of claims. Upon information and belief, Defendant County of Alameda's District Attorney's Office has a policy or longstanding, widespread custom of submitting declarations in support of probable cause for insurance fraud and similar crimes that include facts and misleading statements. Upon information and belief, Defendant County of Alameda's District Attorney's Office failed to properly train its investigators to investigate and seek warrants that are truthful and supported by probable cause for crimes of insurance fraud and false report of crime.

ECF No. 17 at 14-15. She also adequately pleads that the County of Alameda's policies were a cause of Defendant Williams' conduct. ECF No. 17 at ¶ 60. Accordingly, the Court concludes that Plaintiff adequately pleads a plausible claim for relief under Monell as to the County of Alameda's alleged policies.

Although the foregoing allegations are sufficient to state a Monell claim as to Defendant County's alleged policies, they are not sufficient to state a claim as to its alleged customs. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir.

---

[5] The precise language of the First Amended Complaint in La was, "The Notice of Intent to termination [sic] was issued pursuant to SamTrans's policy and/or custom of terminating the employment of SamTrans employees who report suspected financial irregularities, fraud, waste, and abuse, rather than investigating whistleblowing complaints." La v. San Mateo County Transit District, Case No. 3:14-cv-01768-WHO, ECF No. 19 at 8 (July 8, 2014).

15

1996). "A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999); see also Meehan v. Los Angeles County, 856 F.2d 102, 107 (9th Cir.1988) (two incidents not sufficient to establish custom). Although Plaintiff alleges that her rights were violated by Defendant Williams, she does not identify any other person whose rights were violated in a similar way by anyone acting on behalf of the County.

Defendant's motion to dismiss is denied as to Plaintiff's Monell claim regarding Alameda County's policies. The motion is granted with leave to amend as to Plaintiff's allegations regarding Alameda County's customs.

### 3. Plaintiff's Second and Third Causes of Action

#### a. Failure to Comply with Tort Claims Act

Defendant contends that Plaintiff failed to comply with the California Tort Claims Act's claim presentations requirements and thus her state law claims for false arrest, false imprisonment, and intentional infliction of emotional distress necessarily fail. ECF No. 19 at 16, ECF No 45 at 8.

The California Tort Claims Act ("TCA") requires a party seeking to recover money damages from a public entity or its employees to submit a claim to the entity before filing suit in court, generally no later than six months after the cause of action accrues. See Cal. Gov. Code §§ 905, 911.2, 945.4, 950–950.2. "Timely claim presentation is not merely a procedural requirement, but is [ . . . ] a condition precedent to plaintiff's maintaining an action against defendant, and thus an element of the plaintiff's cause of action." Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 209, 64 Cal. Rptr. 3d 210, 164 P. 3d 630, 634 (Cal. 2007) (internal citation and quotation marks omitted).

In order to proceed on her state law claims, Plaintiff must establish that she timely presented the County with a claim for damages, describing the alleged harm she suffered, within six months of accrual of her cause of action, and allege facts demonstrating or excusing that compliance in her complaint. The FAC states that Plaintiff was arrested on November 24, 2015 and "posted bond before Thanksgiving." ECF No. 17 ¶ 45.

According to the FAC, Plaintiff presented her claim to the Alameda District Attorney's

16

Office "in October 2016"—well past the expiration of the six-month claim presentation period. Id. ¶ 52; see also ECF No. 32 at 9. A cause of action for false arrest and false imprisonment, accrues when the plaintiff is released from custody. Scannell v. County of Riverside, 152 Cal. App. 3d 596, 606, 199 Cal. Rptr. 644 (Cal. Ct. App. 1984). Under California law, a cause of action for intentional infliction of emotional distress accrues "when the plaintiff suffers severe emotional distress as a result of outrageous conduct by the defendant." Soliman v. CVS RX Services, Inc., 570 Fed.Appx. 710, 711 (9th Cir. 2014). Therefore, to the extent that Plaintiffs' claims for false arrest, false imprisonment, and intentional infliction of emotional distress are based upon state law, they are time-barred by the Act's claim presentation provisions.

### b. Equitable Estoppel

Plaintiff alleges that her failure to timely file a claim should be excused under the doctrines of equitable estoppel and equitable tolling. Defendant contends that Plaintiff has not successfully pleaded her claim for equitable estoppel. ECF No. 19 at 17.

The doctrine of equitable estoppel is a "creature of equity" that is intended to prevent a party "from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience." Granite State Ins. Co. v. Smart Modular Tech., Inc., 76 F. 3d 1023, 1027 (9th Cir. 1996) (quoting John N. Pomeroy, Equity Jurisprudence § 802 (Spencer W. Symons 5th ed. 1941)). Equitable estoppel is available against the government, although the bar is higher than against a private litigant. Watkins v. U.S. Army, 875 F. 2d 699, 706 (9th Cir. 1989). A party raising equitable estoppel against the government must first "establish affirmative misconduct going beyond mere negligence," and "even then, estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." Id. at 707 (internal quotation marks and citation omitted). Affirmative misconduct requires an affirmative misrepresentation or affirmative concealment of a material fact by the government, United States v. Ruby Co., 588 F. 2d 697, 703–04 (9th Cir. 1978), cert. denied, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979), although it does not require that the government intend to mislead a party.

Here, Plaintiff alleges in her FAC that she filed a "timely" injury claim with the District

17

Attorney's Office of Alameda County in October 2016. ECF No. 17 ¶ 52. Plaintiff also alleges that when she filed the claim, a D.A.'s representative informed her that "she used the wrong form but that he would take it . . . [and] would be in touch with her after investigating." Id. Because the filing was already late, however, any statements by the D.A.'s office had no bearing on the time of filing.

Plaintiff's argument that she had no reason to believe Williams was an Alameda County Employee is also unpersuasive. ECF No. 32 at 9, ECF No. 45 at 10. Plaintiff had plenty of indication that Williams worked for Alameda County. When Plaintiff appeared for court in January 2016, the judge refused to begin hearing her case and ordered her to be fingerprinted in Alameda County. ECF No. 17 ¶ 43, ECF No. 45 at 10. When the charges against her were dismissed in August 2016, she filed a form she had been given by the Oakland Mayor's office with the County District Attorney's office. ECF No. 17 ¶ 46; ECF No. 32 at 10. Plaintiff "knew or should have known that Williams was employed by Alameda County at the time of her arrest, or at least by January 2016." ECF No. 45 at 10.[6]

Plaintiff's argument for estoppel fails. Plaintiff's claim was not timely. The Court concludes that leave to amend would be futile and dismisses Plaintiff's second and third causes of action without leave to amend.

## IV.  CONCLUSION

The Court finds that Plaintiff has adequately alleged a Monell claim against the County of Alameda regarding the County's alleged policies, and denies the motion to dismiss as to those allegations. The motion is granted with leave to amend as to Plaintiff's allegations regarding Alameda County's alleged customs.

The Court grants the motion without leave to amend as to Plaintiff's second and third causes of action.

Plaintiff may file an amended complaint by September 29, 2017 to address the deficiencies

---

[6]Plaintiff raises new claims for malicious prosecution and defamation in her opposition to Defendant's motion to dismiss. ECF No. 32 at 6-7. Because she fails to allege these claims in her FAC, however, the Court does not address them.

18

identified in this order.  If she does not do so, the First Amended Complaint will remain the operative pleading.

IT IS SO ORDERED.

Dated: September 13, 2017

_____
JON S. TIGAR
United States District Judge